

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00214-CR

**LUIS ARMANDO MORALES, JR.,**

                                     **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                     **Appellee**

---

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. F49824

---

## MEMORANDUM OPINION

---

In three issues, appellant, Luis Armando Morales Jr., challenges his convictions for

evading arrest with a vehicle and unlawful possession of a controlled substance.[1]  *See* TEX.

---

[1] The trial court's judgment of conviction for the unlawful-possession-of-a-controlled-substance count indicates that the operative statutory provision is section 481.115(c) of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West 2010) ("An offense under Subsection (a) is a felony of the third degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams.").  However, Morales was charged and convicted of unlawful possession of less than one gram of methamphetamine.  Accordingly, the operative statute for this conviction is section 481.115(b), not section 481.115(c).  *See id.* § 481.115(b) ("An offense . . . is a state jail felony if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, less than one gram.").  Because a court of appeals has authority to correct

PENAL CODE ANN. § 38.04(b)(2)(A) (West 2016); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010).  Specifically, Morales contends that the trial court erred in:  (1) denying his requested jury-charge instructions under article 38.23 of the Code of Criminal Procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); (2) admitting evidence of an in-custody confession; and (3) allowing the State to make improper jury arguments. Because we overrule all of Morales's issues on appeal, we affirm as modified.[2]

## I.     BACKGROUND

Morales was charged by indictment with one count of evading arrest with a vehicle and one count of unlawful possession of a controlled substance—methamphetamine—in an amount less than one gram.  *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b).  Also included in the indictment was a felony-enhancement paragraph detailing Morales's prior conviction for engaging in organized criminal activity.  The jury ultimately found Morales guilty of both counts and found the enhancement paragraph to be "true."  Accordingly, the jury assessed punishment at twenty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for the evading-arrest-with-a-vehicle count and two years' incarceration for the unlawful-possession-of-a-controlled-substance count.

---

and reform a judgment to make the record speak the truth when it has information to do so, we modify the trial court's judgment of conviction to reflect that the statute for the offense is section 481.115(b) of the Health and Safety Code.  *See id.*; *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993).

[2] In light of our disposition, all pending motions are dismissed as moot.

The trial court ordered the sentences to run concurrently and certified Morales's right of appeal. This appeal followed.

## II.     JURY-CHARGE ERROR

In his first issue, Morales asserts that the trial court erred in denying his request for instructions in the charge pursuant to article 38.23 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23. We disagree.

A claim of jury-charge error is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). First, we must determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). And only if we find error do we then analyze that error for harm. *Id.*

Article 38.23(a) of the Code of Criminal Procedure provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). In *Madden*, the Court of Criminal Appeals stated that a defendant's right to the submission of a jury instruction under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or

statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d

504, 509-10 (Tex. Crim. App. 2007). The *Madden* Court further explained:

> There are three requirements that a defendant must meet before he is entitled to a submission of a jury instruction under Article 38.23(a):
>
> > (1) The evidence heard by the jury must raise an issue of fact;
> >
> > (2) The evidence on that fact must be affirmatively contested; and
> >
> > (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.
>
> There must be a genuine dispute about a material fact. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Id.* at 510-11.

Here, witnesses testified to the following, which was undisputed:

- On July 4, 2015, Officer Matthew Cox of the Cleburne Police Department responded to a disturbance call and met with the complainant, Brandon McElroy, at his house at 803 Featherston in Cleburne, Texas;

- McElroy explained that he and Morales had gotten into a dispute and that Morales had said that he was going to come over and "kick his ass";

- McElroy told Officer Cox that Morales drives a white Chevy pickup truck;

- While Officer Cox and McElroy were speaking, Morales drove by 803 Featherston in a white Chevy pickup truck;

- Officer Cox believed that Morales driving by in the white Chevy pickup truck corroborated McElroy's story, gave him reasonable suspicion, and warranted further investigation;

- After seeing Morales drive by, Officer Cox returned to his marked patrol unit, turned on his overhead lights, and began to pursue Morales for the purpose of temporarily detaining him to further investigate McElroy's allegations;

- During his pursuit of Morales, Officer Cox observed Morales violate numerous traffic laws, including failing to stop at a stop sign, speeding, and driving down the wrong side of the road on Featherston;

- Eventually, Morales stopped his pickup truck in front of McElroy's driveway, though the pickup truck blocked McElroy's driveway and was parked more than eighteen inches from the curb, which constituted a traffic hazard;

- After stopping, Morales exited the pickup truck and closed and locked his door;

- Officer Cox exited his vehicle, drew his service weapon, and ordered Morales onto the ground with his hands behind his back;

- Officer Cox handcuffed Morales for evading arrest and placed him in the back seat of the patrol unit;

- Backup officers subsequently arrived at the scene and informed Officer Cox that a bag of meth-looking substance and a glass pipe were in plain view on the center console and driver-side floorboard of Morales's pickup truck, respectively;

- Officer Cox discussed with the backup officers and his supervisor the best way to search the pickup truck for contraband;

- The officers determined that the best way to proceed was to tow and impound the pickup truck and, per written departmental policy, inventory the pickup truck before towing;

- The officers arrived at this decision because Morales was the sole occupant of the pickup truck when he was arrested, and because there was no one else to whom to release the vehicle. Additionally, the pickup truck was a hazard because it was sticking out in the street, and because it was blocking McElroy's driveway. And

finally, the officers believed that the process of getting a search warrant would be lengthy;

- Both Officers Cox and Kasey Cowell testified that the inventory was executed as per departmental policy.

Despite the foregoing, Morales argues that he was entitled to an article 38.23 instruction in the charge because the State failed to prove that an inventory policy existed, and because there was no showing that the officers followed an inventory policy. However, Sergeant Cody Bossier of the Cleburne Police Department noted that the department has had a written inventory policy for over twenty-five years and that it has remained consistent. Furthermore, both Officers Cox and Cowell provided testimony about the department following its inventory policy, and this testimony was not in dispute. Accordingly, we cannot say that Morales has directed us to evidence heard by the jury that raised an issue of fact that was affirmatively contested and material to the lawfulness of the challenged conduct—the search of his pickup truck. *See id.* at 510-11.

Morales also contends that he raised a fact issue as to whether the traffic stop was lawful. In particular, Morales asserts that Officer Cox did not corroborate McElroy's story enough to justify the traffic stop. We disagree. Officer Cox testified without contradiction that McElroy complained that Morales had threatened to come over and assault him and that Morales drove a white Chevy pickup truck. During the conversation at McElroy's house, Officer Cox observed Morales driving by slowly in a white Chevy pickup truck, thus corroborating McElroy's allegation. *See Pipkin v. State*, 114 S.W.3d 649,

654 (Tex. App.—Fort Worth 2003, no pet.) ("'Corroboration' in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified."); *see also State v. Stolte*, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.) (noting that a tip deserves great weight if the person put himself in a position to be held accountable for his intervention) (citing *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir.)).

Furthermore, while pursuing Morales with his overhead lights activated, Officer Cox saw Morales continue driving, rather than immediately pulling over, and violating several traffic laws, including speeding, failing to stop at a stop sign, and driving on the wrong side of the road. *See* TEX. PENAL CODE ANN. § 38.04; *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.) ("There is evidence that Mayfield was driving, that the officer had cause to stop him for a traffic violation, that the officer was in a marked squad car with emergency lights flashing and siren sounding, and that Mayfield did not stop for an extended period of time. The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law. Thus, under the law, fleeing slowly is still fleeing."); *see also* TEX. TRANSP. CODE ANN. § 544.010(a), (c) (West 2011) (providing that the operator of a

vehicle shall stop when approaching an intersection with a stop sign); *id.* § 545.352(a) (West Supp. 2016) ("A speed in excess of the limits established by Subsection (b) or under another provision of this subchapter is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful."). Therefore, considering the totality of the circumstances, Officer Cox had reasonable suspicion to initiate the traffic stop of Morales. *See Pipkin*, 114 S.W.3d at 653-54 ("To initiate an investigative stop, the investigating officer must possess a reasonable suspicion based on specific articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to the reasonable conclusion that criminal activity is underway and the detained person is connected to the activity."). Moreover, Morales has not directed us to evidence demonstrating a fact issue that was material and affirmatively contested with regard to the traffic stop. *See Madden*, 242 S.W.3d at 510-11.

Based on the foregoing, we conclude that the trial court did not err in failing to include an article 38.23 instruction in the jury charge. *See id.*; *Barrios*, 283 S.W.3d at 350; *Ngo*, 175 S.W.3d at 743; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23. We overrule Morales's first issue.

### III.    MORALES'S CONFESSION

In his second issue, Morales argues that the trial court erred in admitting evidence of his in-custody confession obtained in violation of article 38.22 of the Code of Criminal

Procedure and *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West Supp. 2016).

The record reflects that Morales filed a motion to suppress all oral statements he made to any law enforcement officers or others in connection with this case and any testimony by law enforcement officers or others concerning such statements. At the hearing on his motion to suppress, Morales identified two incriminating statements that he made to Officer Cox and argued that the statements were not voluntarily made because they were the product of non-*Mirandized*, custodial interrogation. The trial court overruled Morales's objections to the proffered evidence.

During the State's case-in-chief, Officer Cox testified that he drew his service weapon and commanded Morales to get on the ground with his hands behind his back when Morales exited his pickup truck. Officer Cox handcuffed Morales and placed him under arrest for evading arrest with a vehicle. While the handcuffs were being placed on him, Morales identified himself as the brother of Officer Cox's brother-in-law in an attempt to "make it personal. That way I would cut him a break or go lighter on him or whatever." Officer Cox stated that he knew who Morales was and that Morales should not have evaded. Morales responded, "I know," and asked for Officer Cox to "[c]ut him a break, not take him to jail."

Later, the following exchange occurred between the State and Officer Cox:

[Prosecutor]:          All right.  Thank you.  Now before you searched the vehicle, did Mr. Morales call you over to the vehicle he was sitting in in the back of the patrol car?

[Officer Cox]:        Yes.

Q:          And what did he ask you, if anything?

A:          He asked me what we were doing with the vehicle.

Q:          And what did you tell him?

A:          I told him we were going to tow it and that we were going to inventory it and that the bag of meth was going to catch him another charge.

Q:          In response to that, what did he say?

A:          He said, [i]t was just a baggy and a pipe.

Q:          Did that indicate to you that he knew a baggy and a pipe were in the vehicle?

A:          Yes.

Q:          Did he deny at that point knowing the baggy and the pipe were in the vehicle?

A:          No.

Shortly thereafter, the State offered State's Exhibit 2, a DVD of the video from Officer Cox's body camera, into evidence.  At this time, defense counsel stated, "we would renew our objections previously enumerated."  The trial court overruled counsel's objections, and the State played the video for the jury.  During the playing of the video, the complained-of incriminating statements were again heard.

On appeal, Morales complains about Officer Cox's testimony regarding the incriminating statements. However, as shown above, Morales did not object to Officer Cox's testimony regarding the incriminating statements. "A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1(a)(1)(A). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.— Waco 2011, pet. ref'd) (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). Moreover, "a party must object each time the inadmissible evidence is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)). "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id.* (citing *Ethington*, 819 S.W.2d at 858); *see Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). Because Morales did not object when Officer Cox testified during the State's case in chief about the incriminating statements, any error in the admission of the complained-of evidence was cured. *See Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509; *Grant*, 345 S.W.3d at 512. We overrule Morales's second issue.

## IV. JURY ARGUMENT

In his third issue, Morales complains about the State's closing argument during the guilt-innocence phase of trial. Specifically, Morales complains about the following statements:

> And why did Luis Morales run? Because of that bag of meth, the bag of poison right next to him in his truck. Why did he run the stop signs? Why did he speed? Why did he lock everyone out of his truck as soon as he pulled over? Why did he throw those keys behind the Cadillac? Why did four other police officers have to come off of their beat to leave parts of our community with less protection? Why did Rodney, the tow truck driver, have to come pull the white Chevy pickup truck out of the street, out from in front of the driveway at 803 Featherston? So Luis Morales or because Luis Morales was trying to protect that bag of dope, that bag of poison sitting next to him in his pickup truck.

> . . . .

> And I want to say one other thing. This little comment about how it's only .09 grams of meth—we had officers tell you meth is bad business. It gets in families and it ruins them. It gets into peoples' lives and they become less than they were, right? They stop working. They lose their job. It just infests and it infects and it's a poison, and yet multiple officers say something— and I hope you picked up on it—they said when meth is involved other crimes are involved. Meth is underlying so many of our crimes. And you may have—that may have not registered or you just thought whatever, it's just an officer talking, but this case is a perfect example. Because he had meth he was going to evade. Well, it was either that or because he had warrants out, but I think it's safe to assume it's because he had meth. Why do I say that? Because he locked the doors as soon as he got out of that vehicle.

The record does not reflect that Morales objected to these statements in the trial court.

Texas courts have held that a "defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument

forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see Mays v. State*, 318 S.W.3d 368, 394 (Tex. Crim. App. 2010) ("[W]e will not review the propriety of the prosecutor's arguments, [when] appellant failed to object to those arguments at trial."); *Morris v. State*, 460 S.W.3d 190, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Freeman v. State*, No. 11-13-00232-CR, 2015 Tex. App. LEXIS 8515, at *10 (Tex. App.—Eastland Aug. 13, 2015, no pet.) (mem. op., not designated for publication). Therefore, because Morales failed to object to the complained-of statements made in the State's argument, we conclude that Morales has forfeited his right to complain about this issue on appeal. *See* TEX. R. APP. P. 33.1; *Mays*, 318 S.W.3d at 394; *Cockrell*, 933 S.W.2d at 89; *Morris*, 460 S.W.3d at 197; *see also Freeman*, 2015 Tex. App. LEXIS 8515, at *10. Accordingly, we overrule Morales's third issue.

## V. CONCLUSION

Because the trial court's judgment references the wrong statute for the unlawful-possession-of-a-controlled-substance count, we modify that judgment to show that the statute corresponding with the charged offense is section 481.115(b) of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b); *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We affirm the trial court's judgments in all other respects.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed as modified
Opinion delivered and filed June 14, 2017
Do not publish
[CR25]

